UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                          Chapter 13

Ezroy C. Spencer,                               Case No. 09-74255

        Debtor.                                 Hon. Phillip J. Shefferly
_____/

Maple Forest Condominium Association,           Adversary Proceeding No. 10-04501-PJS
a/k/a Red Maple Lane Association,

        Plaintiff,

v.

Ezroy C. Spencer,

        Defendant.
_____/


**OPINION (1) DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT; AND (2) GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


## Introduction

        Ezroy C. Spencer ("Debtor") is a debtor in a Chapter 13 case. Maple Forest Condominium

Association, a/k/a Red Maple Lane Association ("Maple Forest") is a creditor in the Debtor's

Chapter 13 case. On February 8, 2010, Maple Forest filed a complaint seeking a declaration that

certain debts alleged to be owed by the Debtor to Maple Forest are non-dischargeable. Maple Forest

and the Debtor have filed cross motions for summary judgment. On September 24, 2010, the Court

heard the cross motions for summary judgment, and took both motions under advisement. For the

reasons explained in this opinion, the Court has determined to deny the Plaintiff's motion for

summary judgment and grant the Debtor's motion for summary judgment in part and deny it in part.

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (I), over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

## Facts

On November 5, 2009, the Debtor filed a Chapter 13 petition. The Debtor's schedule A – Real Property – listed the Debtor as fee simple owner of a condominium located at 801 Red Maple Lane, Unit 63, Wixom, Michigan. The Debtor listed the condominium has having a current value of $176,718.00. The Debtor's schedule A stated that the amount of the secured claims with respect to the condominium was $211,693.00. The Debtor's schedule D - Creditors Holding Secured Claims – identified three secured creditors with respect to the condominium. CitiMortgage Inc. was listed as the holder of a first mortgage in the amount of $176,718.00. Guaranty Bank was listed as holding a $33,975.00 secured claim based on an equity line of credit. Maple Forest was listed as the holder of a secured claim for $1,000.00 representing condominium fees.

On January 6, 2010, the Debtor filed an amended Chapter 13 plan. The plan treated all three secured claims as class two continuing claims, and stated that the Debtor would not be making any monthly payments to those three secured creditors, but instead simply stated the language: "Surrender Property" in the section describing the treatment for each of those three secured creditors. In section II. C., the plan provided that the automatic stay would be lifted as to any "collateral treated as surrendered or abandoned" upon confirmation of the plan. In that same paragraph, the plan provided that creditors filing a secured claim secured by collateral that the Debtor's plan proposes to surrender would have 12 months from the date of confirmation in which

to amend their claim to establish any deficiency arising from the surrender of such collateral, and that such deficiency claim would be treated as a class eight general unsecured claim.

On January 11, 2010, Maple Forest filed an objection to confirmation of the plan. That objection raised a number of issues, including Maple Forest's assertion that condominium dues assessed to the condominium are non-dischargeable under § 523(a)(16) of the Bankruptcy Code; that the proposed surrender of the condominium is ineffective unless memorialized by execution and delivery of a deed or by foreclosure; and that the plan makes no provision for the payment of condominium dues accruing post-petition. CitiMortgage also filed an objection to the plan, apparently based on its belief that the proposed surrender of the condominium was intended to be in full satisfaction of its mortgage debt. On January 14, 2010, CitiMortgage filed a motion for relief from stay in which it alleged that the approximate market value of the condominium was $176,718.00, and that the debt owed by the Debtor to CitiMortgage was approximately $181,728.00 and, therefore, that there was no equity in the condominium. On February 1, 2010, CitiMortgage filed a certificate of no response to its motion for relief, and the Court entered an order on February 2, 2010 granting CitiMortgage relief from the automatic stay to enforce its remedies. On February 5, 2010, Maple Forest filed an amended objection to confirmation of the plan that mirrored its original objection, but also alleged that the Debtor had failed to maintain the condominium, had failed to winterize it, and that the Debtor's failure had caused broken water pipes, resulting in "several thousand dollars' damage" to the condominium. On the same day that Maple Forest filed its amended objection to confirmation, it also filed this adversary proceeding. The complaint in this adversary proceeding seeks "declaratory relief that the Debtor's post petition obligations and post petition damage to property are not dischargeable."

On January 22, 2010, Maple Forest filed a proof of claim in the amount of "$1,275.00 Plus post-petition accruing plus atty. fees." The proof of claim indicated that the basis for the claim was "services," and that the claim was secured by "real estate." The attachment to the proof of claim stated that the condominium dues assessed up to the petition date totaled $1,275.00, and further stated that the monthly assessment accruing from December, 2009 forward was $235.00, and that the attorney fees were $1,000.00. At the end of the one page attachment appeared the following statement:

> Claims are secured to extent of property value and unsecured thereafter, but are continuing claims post-petition pursuant to 11 USC 523(a)(16).

A hearing on confirmation of the Debtor's plan was scheduled for April 20, 2010. On April 19, 2010, Maple Forest filed a notice of withdrawal of its objections to confirmation. There is nothing in the file that explains why the objections were withdrawn. The Court's docket indicates that the confirmation hearing was not called on the Court's contested docket on April 20, 2010, but instead was adjourned by agreement of the Debtor and the Chapter 13 Trustee until May 18, 2010 to permit the Debtor to submit a proposed order confirming plan with any outstanding objections to be resolved prior to submission of the order. On April 24, 2010, without any further hearing, the Court entered by consent an order confirming the Debtor's plan. The order was approved for entry by the Chapter 13 Trustee and by the attorney for CitiMortgage, which was the only creditor or other party in interest with an outstanding objection to the Debtor's plan that had not previously been withdrawn. It appears that the Debtor has made payments to the Chapter 13 Trustee pursuant to the confirmed plan since the date of its confirmation.

Although Maple Forest withdrew its objections to confirmation of the plan, and the plan was confirmed by the Court without objection, Maple Forest's complaint in this adversary proceeding

-4-

remained pending. The Debtor filed an answer to the complaint, and the Court entered a scheduling order in the adversary proceeding. On August 13, 2010, Maple Forest filed a motion for summary judgment. On August 15, 2010, the Debtor filed a motion for summary judgment. Maple Forest and the Debtor each replied to the other's motion for summary judgment, and both motions were heard by the Court on September 24, 2010.

Maple Forest's complaint is a one count complaint. In its title, it states that Maple Forest seeks "declaratory relief." In the body of the complaint, Maple Forest alleges that the Debtor retains legal title to the condominium notwithstanding the statement in the Debtor's plan providing for a "surrender" of the condominium to CitiMortgage, Guaranty Bank and Maple Forest. Maple Forest's complaint alleges that condominium association dues continue to accrue with respect to the condominium for as long as the Debtor retains a legal or equitable right in the condominium, and requests that the Court declare that the condominium association dues that become due and payable post-petition are non-dischargeable in the Debtor's Chapter 13 case, based on § 523(a)(16) of the Bankruptcy Code. The complaint further alleges that the Debtor failed to maintain the condominium, allowed insurance to lapse, and discontinued electrical power to the condominium, all of which conduct is alleged to be contrary to the Debtor's "obligations to maintain the property." The complaint further alleges that the Debtor's actions caused the condominium to deteriorate, resulting in $38,000.00 of damage to the condominium. Maple Forest's complaint seeks a declaration that the damage caused to the condominium by the Debtor's conduct is a debt that is not dischargeable in the Debtor's Chapter 13 case. Finally, the complaint requests that the Court award attorney fees to Maple Forest.

Maple Forest's motion for summary judgment, unlike its complaint, does not rely upon § 523(a)(16) of the Bankruptcy Code as the basis for a determination of non-dischargeability of the condominium association dues that became due and payable post-petition. Maple Forest's motion for summary judgment does not explain why the condominium association dues that become due and payable post-petition should be adjudicated to be non-dischargeable, but instead focuses on the damage alleged to have occurred to the condominium as a result of the Debtor's failure to maintain the condominium. Maple Forest argues that the Debtor's purported surrender of the condominium was ineffective to divest the Debtor of legal or equitable title to the condominium and, therefore, the Debtor remains the holder of both a legal and equitable interest in the condominium.[1] Maple Forest's motion for summary judgment argues that the water pipes in the condominium froze and burst after the Debtor filed his bankruptcy petition, causing damage to the condominium and, because the Debtor is still the holder of legal title and an equitable interest in the condominium, the Debtor is responsible for such damage. For legal authority, Maple Forest points to § 521 of the Bankruptcy Code, and argues that this section requires the Debtor in this Chapter 13 case to file a statement of intention regarding any property securing a claim against the Debtor, to perform that statement of intention, and to preserve and maintain property of the estate. Maple Forest attaches to its motion two invoices and an email that appear to relate to services either performed or to be performed to rectify damage to the condominium. Maple Forest's motion for summary judgment is not accompanied by any other documents, nor by any affidavits. However, Maple Forest did file a supplement to its motion for summary judgment that attached copies of the master deed and an

---

[1] Both the Debtor and Maple Forest acknowledged at the hearing on September 24, 2010 that CitiMortgage has not yet foreclosed its mortgage on the condominium, despite the fact that the stay was lifted to permit CitiMortgage to foreclose back on February 2, 2010.

unsigned portion of bylaws for the Maple Forest condominiums. Maple Forest directed the Court's attention in that supplement to certain pages of the master deed and bylaws that describe common elements of the condominium project and that provide for certain covenants of condominium unit owners to the association.

The Debtor responds to Maple Forest's motion for summary judgment by arguing that Maple Forest's complaint does not provide any authority that would make the condominium association dues that become due and payable post-petition non-dischargeable in the Debtor's Chapter 13 case. With respect to the alleged damage to the condominium, the Debtor argues that Maple Forest's complaint and motion for summary judgment do not identify any legal duty that the Debtor owed to Maple Forest to maintain the condominium. The Debtor argues that Maple Forest's reliance on § 521 of the Bankruptcy Code as somehow creating such duty is misplaced and, in particular, points out that the requirements of § 521(a)(2) and (6) of the Bankruptcy Code to file and perform a statement of intention with respect to property that secures a claim against the Debtor do not apply in Chapter 13 cases such as the Debtor's, but only apply in Chapter 7 cases.

In addition to responding to Maple Forest's motion, the Debtor filed his own motion for summary judgment. Although titled as a motion for summary judgment, the body of the Debtor's motion also seeks dismissal of Maple Forest's complaint under Fed. R. Civ. P. 12(b)(6). The Debtor's motion for summary judgment first addresses the condominium association dues that become due and payable post-petition. The Debtor argues that a review of the Bankruptcy Code sections defining "debt" and "claim" demonstrates that even though the condominium association dues continue to become due and payable post-petition, they constitute a pre-petition claim against the Debtor. Further, the Debtor argues that § 523(a)(16) of the Bankruptcy Code, which creates an

exception to discharge in a Chapter 7 case for condominium association dues that become due and payable post-petition, does not apply to a Chapter 13 discharge under § 1328(a) of the Bankruptcy Code, and only applies in a Chapter 13 bankruptcy case in which the debtor seeks a hardship discharge under § 1328(b) of the Bankruptcy Code. Because the Debtor is not seeking a hardship discharge in this case, the Debtor asserts that § 523(a)(16) has no application to this case. Finally, the Debtor's motion for summary judgment argues that Maple Forest has not identified any statutory or contractual basis for any cause of action in favor of Maple Forest and against the Debtor to recover for any failure to maintain the condominium but, more importantly, even if there is such a cause of action, there is no basis for the Court to determine that it is a non-dischargeable debt.

<u>**Standard for Summary Judgment**</u>

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Berryman v. Rieger</u>, 150 F.3d 561, 566 (6th Cir. 1998) (quoting <u>Anderson</u>, 447 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." <u>Kalamazoo River Study Group v. Rockwell International Corp.</u>, 171 F.3d 1065, 1068 (6th Cir. 1999) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23

-8-

(1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Id. (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (citing Anderson, 447 U.S. at 256).

## Analysis

Is Maple Forest's claim for condominium dues
that become due and payable post-petition a pre-petition claim?

The Debtor and Maple Forest do not dispute that the Debtor purchased condominium unit 63 in the Maple Forest condominium project. Nor do they dispute that there is a master deed for the condominium project, and that there are bylaws that govern it. As is typical of condominium projects, the master deed and bylaws permit the condominium association to make assessments against each condominium unit owner, and to collect those assessments against the condominium unit. The Condominium Act of Michigan, Mich. Comp. Laws Ann. §§ 559.101 - 559.276, creates a statutory framework governing condominium projects, and the relationship between condominium associations and condominium unit owners or "co-owners," as referred to in the statute. The Debtor and Maple Forest do not dispute that at the time that the Debtor filed his Chapter 13 case on November 5, 2009, the Debtor owned condominium unit 63 in the Maple Forest condominium project, and that there were outstanding condominium association dues that had been assessed prior to the time that the Debtor filed his Chapter 13 bankruptcy case.

Maple Forest filed proof of claim no. 6-1 on January 22, 2010 in which it asserted a claim both for the condominium dues that were assessed prior to the date of the petition, and for the

condominium dues that become due and payable after the petition date. The Debtor did not file an objection to that proof of claim, nor did any other party. Therefore, Maple Forest's claim is deemed allowed under § 502(a) of the Bankruptcy Code. Although Maple Forest's claim is deemed allowed, in order for the Court to consider Maple Forest's arguments that this claim is non-dischargeable in this Chapter 13 case, it is important to first understand whether the Bankruptcy Code treats this claim as a pre-petition claim or as a post-petition claim.

Section 101(5)(A) of the Bankruptcy Code defines the term "claim" as including a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured [.]" There are many opinions that have construed the phrase "right to payment," as it is used in the definition of "claim" in § 101(5)(A) of the Bankruptcy Code, for purposes of determining whether a claim is a pre-petition claim or a post-petition claim. "Right to payment" is not defined in the Bankruptcy Code. However, "'Congress intended by this language to adopt the broadest available definition of "claim."'" In re Dixon, 295 B.R. 226, 229 (Bankr. E.D. Mich. 2003) (quoting Johnson v. Home State Bank, 501 U.S. 78, 83 (1991)). In Dixon, this Court reviewed the different tests that courts have developed for determining when a claim arises, as discussed by Judge Rhodes in In re Parks, 281 B.R. 899 (Bankr. E.D. Mich. 2002) (adopting the test from In re Piper Aircraft Corp., 58 F.3d 1573 (11th Cir. 1995)).

The most widely adopted test, followed by Parks and Dixon, has been alternately termed the "fair contemplation," "foreseeability," "pre-petition relationship," or "narrow conduct" test. It looks at whether there was a pre-petition relationship between the debtor and the creditor, "such as contract, exposure, impact or privity," such that "a possible claim is within the fair contemplation

-10-

of the creditor at the time the petition is filed." Dixon, 292 B.R. at 230 (internal quotation marks and citations omitted). See also In re Huffy Corp., 424 B.R. 295, 305 (Bankr. S.D. Ohio 2010) (noting that the Sixth Circuit "has not formally voiced its opinion on the various approaches to determining when a claim arises," but "courts within the Sixth Circuit have adopted either the conduct or the relationship/fair contemplation tests," and citing cases within the circuit); Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1038-40 (W.D. Tenn. 2003) (adopting the fair contemplation test and noting that "[c]ourts and commentators have offered little criticism for [this] approach").

There is no Sixth Circuit opinion specifically addressing whether condominium association dues that become due and payable post-petition constitute a pre-petition or post-petition claim under the Bankruptcy Code. But there are a number of opinions from other courts that have addressed this issue in the context of non-dischargeability actions in Chapter 7 cases decided before the enactment of § 523(a)(16) as an exception to discharge in 1994. See In re Rivera, 256 B.R. 828, 831-32 (Bankr. M.D. Fla. 2000) (collecting three different lines of cases and explaining how the enactment of § 523(a)(16) was intended to resolve the split of authority); In re Garcia, 168 B.R. 320 (Bankr. E.D. Mich. 1993) (addressing whether post-petition association fees were discharged and agreeing with a line of cases finding that condominium assessments accruing post-petition but arising out of a pre-petition contract are dischargeable debts in a Chapter 7 proceeding). Generally, the split in authority can be traced back to state law, which governs the substance of claims,[2] and whether the

---

[2] "'What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed, is a question which, in the absence of overruling federal law, is to be determined by reference to state law.'" In re Dow Corning Corp., 456 F.3d 668, 684 (6th Cir. 2006) (quoting Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 161 (1946)) (other citations omitted).

debt arose out of a property right or as a matter of contract.  Compare <u>Gouveia v. Tazbir</u>, 37 F.3d 295, 298 (7th Cir. 1994) (applying Indiana law and finding that "the primary nature of [restrictive] covenants is not contractual but rather a property interest"), <u>with</u> <u>In re Rosteck</u>, 899 F.2d 694, 696-97 (7th Cir. 1990) (applying Illinois law in determining that the obligation to pay post-petition condominium assessments was contractual and therefore a pre-petition debt).  Other cases decided under Chapter 13 have looked to state law as well in determining whether a debtor's obligation to pay condominium or homeowners' association assessments arose from a pre-petition contract or were a post-petition obligation running with the land.  Compare <u>Foster v. Double R Ranch Ass'n</u> (<u>In re Foster</u>), ___ B.R. ___, 2010 WL 3504116 at *1, *5-6, *8 (B.A.P. 9th Cir. July 19, 2010) (applying Washington law where a Chapter 13 debtor sought to discharge post-petition homeowner's association dues, ruling that the dues arose out of a covenant running with the land, and therefore the "debtor's personal liability for the dues is an incidence of ownership of his property not affected by the filing of his bankruptcy" as long as the debtor "maintains his legal, equitable or possessory interest in the property[,] and is unaffected by his discharge"), <u>with</u> <u>In re Hawk</u>, 314 B.R. 312, 315-16 (Bankr. D. N.J. 2004) (looking to New Jersey law, which gives condominium associations the right to make assessments upon an owner taking title, finding that the post-petition assessments arose pre-petition when the debtor took title, and concluding that the post-petition assessments were the "'contingent,' 'unmatured' portion of that prepetition claim").

After reviewing those cases as well as the sections of the Bankruptcy Code defining a claim, and those opinions addressing generally the tests for determining whether a claim is a pre-petition claim or a post-petition claim, the Court concludes that Maple Forest's claim for condominium

association dues, whether assessed pre-petition or becoming due and payable post-petition, is a pre-petition claim in the Debtor's Chapter 13 case.  There are several reasons for this conclusion.

First, the Debtor's obligation to pay condominium association dues to Maple Forest undoubtedly emanates from a pre-petition relationship between the Debtor and Maple Forest.  The Debtor's purchase of the condominium and the obligation of the Debtor to abide by the master deed and bylaws with respect to Maple Forest condominiums occurred prior to the Debtor's bankruptcy petition.  Because of that pre-petition relationship between the Debtor and Maple Forest, a possible claim for the condominium association dues that become due and payable in the future, even post-petition, was unquestionably within the fair contemplation of Maple Forest when the Debtor filed his petition on November 5, 2009.

Second, as evidence that Maple Forest itself contemplated that the condominium association dues becoming due and payable post-petition would constitute a pre-petition claim in this case, the Court need look no further than the very proof of claim filed by Maple Forest.  The proof of claim filed by Maple Forest on January 22, 2010 specified the amount of Maple Forest's prepetition claim as "$1,275.00 Plus post-petition accruing plus atty. fees."  The attachment to the proof of claim specifically provided that the claim of Maple Forest includes "CONDOMINIUM ASSESSMENTS TO DATE OF FILING" and "MONTHLY ACCRUING ASSESSMENT DECEMBER 2009 FORWARD $235.00."  Maple Forest certainly understood and intended when it filed its proof of claim against the Debtor that its proof of claim should include not just the amount of the condominium association dues that had already accrued as of the petition date, but any condominium association dues that become due and payable after the petition date.

-13-

Third, if a debtor owned a condominium pre-petition, but the condominium association dues that become due and payable post-petition constitute a post-petition claim rather than a pre-petition claim, then there would be no need to have an exception to discharge in § 523(a)(16) of the Bankruptcy Code to except from the specific discharge sections identified in that section the liability for the post-petition condominium association dues that continue to become due and payable. See In re Hawk, 314 B.R. at 316-17 ("By defining the parameters of when post-petition fees and assessments can and cannot [be] discharged, Congress was implicitly stating that these future assessments are claims. If they were not claims, they would not be subject to discharge.").

Finally, the Michigan Condominium Act does provide for condominium documents to "impose reasonable restrictions or covenants running with the land upon a condominium unit . . . ." Mich. Comp. Laws Ann. § 559.146. But neither party in this case identified, nor could the Court find, any provision in the documents filed with the Court that imposes a restriction or covenant that makes the Debtor's obligation to pay condominium association dues to Maple Forest continue post-petition as a personal liability of the Debtor, unaffected by a Chapter 13 discharge.

In short, not only was the continuing accrual of condominium association dues post-petition within the "fair contemplation" of Maple Forest in an abstract sense, but a review of its proof of claim demonstrates that Maple Forest well understood when it filed its proof of claim, that the condominium association dues that became due and payable post-petition also made up a part of its pre-petition claim in this case. Therefore, the Court holds that all of the condominium association dues assessed by Maple Forest against the Debtor with respect to condominium unit 63 make up a pre-petition claim, regardless of whether such dues were assessed prior to the Debtor's Chapter 13 petition or whether they became due and payable after the Debtor's Chapter 13 petition.

-14-

Does the exception to discharge contained in
§ 523(a)(16) apply to the condominium dues in this case?

Having determined that the Debtor's obligation to pay condominium association dues with respect to condominium unit 63 gives rise to a pre-petition claim in favor of Maple Forest, the question then becomes whether there is any basis to conclude that Maple Forest is entitled to a finding that this pre-petition claim is somehow non-dischargeable in this Chapter 13 case. Maple Forest's complaint relies upon § 523(a)(16) of the Bankruptcy Code to support a finding of non-dischargeability. Section 523(a)(16) of the Bankruptcy Code provides as follows:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> (16) for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case;

Section 523(a)(16) of the Bankruptcy Code creates an express exception to discharge for certain condominium association fees that become due and payable after the commencement of a bankruptcy case where a debtor continues to have a legal, equitable or possessory interest in a condominium unit, but this exception does not apply to every type of bankruptcy discharge. On its face, § 523(a)(16) of the Bankruptcy Code only creates an exception to discharge to the extent that the discharge is granted in a Chapter 7 case, a Chapter 11 case, a Chapter 12 case, or a hardship discharge in a Chapter 13 case under § 1328(b) of the Bankruptcy Code. The Debtor in this case does not seek a discharge under any of those sections of the Bankruptcy Code and, therefore, § 523(a)(16) of the Bankruptcy Code has no application whatsoever to Maple Forest's claim in this

-15-

Chapter 13 case. In this case, if the Debtor completes his Chapter 13 plan, then the Court is required under § 1328(a) of the Bankruptcy Code to grant the Debtor a discharge of all debts provided for by the plan, except for those debts specifically described in § 1328(a)(1) through (4) of the Bankruptcy Code. There are exceptions to a § 1328(a) Chapter 13 discharge. But the exception for post-petition condominium association dues described in § 523(a)(16) of the Bankruptcy Code is not one of the exceptions to the discharge that a debtor receives upon completion of a Chapter 13 plan under § 1328(a) of the Bankruptcy Code. Maple Forest's reliance on § 523(a)(16) of the Bankruptcy Code is misplaced. Therefore, to the extent that Maple Forest seeks a declaration that any of the condominium association dues that have become due and payable either pre-petition or post-petition in favor of Maple Forest with respect to the Debtor's condominium are non-dischargeable, such relief is denied. There is no genuine issue of material fact in dispute, and the Debtor is entitled to judgment as a matter of law denying this request for declaratory relief.

Are either Maple Forest or the Debtor entitled to summary
judgment on Maple Forest's claim for damages to the condominium?

As noted earlier, Maple Forest's complaint is a one count complaint, but it addresses in substance both the condominium association dues assessed against condominium unit 63, and the damage to the condominium itself allegedly caused by the Debtor. The complaint alleges that the Debtor was obligated to maintain the condominium during this bankruptcy case, and failed to do so, resulting in damages to the condominium. Before considering whether either Maple Forest or the Debtor is entitled to summary judgment on the non-dischargeability of such claim, the Court must first ascertain what Maple Forest asserts is the basis for its damages claim. Unlike its claim for condominium dues, Maple Forest did not file a proof of claim in this case for any damages to the condominium. The complaint does not identify any authority to support Maple Forest's allegation

-16-

that the Debtor owed a duty to Maple Forest to maintain the condominium "during the administration of the case," but instead speaks only in vague, general terms of the Debtor's "obligations to maintain the property."

On the other hand, Maple Forest's motion for summary judgment and brief in support at least cite some authority to support its damage claim. First, Maple Forest argues that § 521 of the Bankruptcy Code imposes obligations upon a debtor to maintain and preserve property of the bankruptcy estate. Specifically, Maple Forest argues that § 521(a)(2) of the Bankruptcy Code requires a debtor to file a statement of intention with respect to property that secures a claim against the debtor, and that § 521(a)(6) of the Bankruptcy Code requires a debtor to perform such intention within a stated period of time. Maple Forest is correct that § 521(a)(2) and (6) of the Bankruptcy Code do impose duties upon individual debtors. But, by their terms, they apply only to individual debtors in a Chapter 7 case. The statement of intention described in § 521(a)(2) of the Bankruptcy Code is required by Bankruptcy Rule 1007(b)(2) to be filed only by individuals in Chapter 7 cases. Likewise, § 521(a)(6) of the Bankruptcy Code, which requires an individual debtor to perform the debtor's statement of intention within a specified time period applies, by its express terms, only "in a case under chapter 7 of this title." The duties imposed by § 521(a)(2) and (6) of the Bankruptcy Code do not apply to the Debtor's Chapter 13 case. There are no genuine issues of material fact in dispute. To the extent that Maple Forest's complaint seeks a declaration that it holds a damage claim that is non-dischargeable in the Debtor's Chapter 13 case because of violations of § 521 of the Bankruptcy Code, the Court concludes that there are no genuine issues of material fact in dispute and that the Debtor is entitled to summary judgment.

-17-

Maple Forest's motion for summary judgment also argues that Maple Forest holds a claim against the Debtor for damages to the condominium on account of the Debtor's failure to maintain the property, based on the master deed and bylaws of the Maple Forest condominium association. Although Maple Forest's motion for summary judgment and brief in support do not identify any specific sections of either the master deed or the bylaws that impose specific obligations of maintenance upon the Debtor, Maple Forest's supplement did attach a copy of a master deed dated July 2, 1992 and unsigned and undated excepts from bylaws for Maple Forest condominiums. One of the pages Maple Forest cites as being relevant to the assessment and enforcement of the water damage claim is page 13 of the bylaws. That page of the bylaws includes Article VI, Section 13, which provides as follows:

> **Co-owner Maintenance.** Each Co-owner shall maintain his Unit and any Limited Common Elements appurtenant thereto for which he has maintenance responsibility in a safe, clean and sanitary condition. Each Co-owner shall also use due care to avoid damaging any of the Common Elements including, but not limited to, the telephone, water, gas, plumbing, electrical or other utility conduits and systems and any other elements in any Unit which are appurtenant to or which may affect any other Unit. Each Co-owner shall be responsible for damages or costs to the Association resulting from negligent damage to or misuse of any of the Common Elements by him, or his family, guests, agents or invitees, unless such damages or costs are covered by insurance carried by the Association (in which case there shall be no such responsibility, unless reimbursement to the Association is excluded by virtue of a deductible provision[,] in which case the responsible Co-owner shall bear the expense to the extent of the deductible amount). Any costs or damages to the Association may be assessed to and collected from the responsible Co-owner in the manner provided in Article II hereof.

This section of the bylaws does impose certain maintenance obligations on the Debtor, makes the Debtor responsible for certain damages, and further provides that Maple Forest has a claim for any uninsured costs as a result of those damages. Maple Forest's complaint, motion and brief are all very imprecise in identifying whether and how this section of the bylaws may apply.

-18-

The Debtor first argues that any claim for damage under this section of the bylaws must be dismissed under Rule 12(b)(6).  Although the Debtor did not file a separate motion for dismissal, the Debtor's motion for summary judgment correctly observes that the complaint lacks clarity and leaves to guesswork the legal grounds for Maple Forest's claim for water damages and attorney fees. However, the Debtor also acknowledges that, if these claims are collectible by Maple Forest at all, they are "certainly collectible only by virtue of the bylaws."  After reviewing the excerpts of the bylaws attached to Maple Forest's supplement, despite the complaint's imprecision, the Court concludes that the complaint does state a claim sufficient to survive the Debtor's request for dismissal.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550 (2007)).

Turning to the motions for summary judgment and the Rule 56(c) standard, it is clear to the Court that there are many genuine issues of material fact regarding Maple Forest's claim against the Debtor for damages.  Neither Maple Forest nor the Debtor provided the Court with any affidavit attesting to any facts and circumstances surrounding any alleged damage or deterioration of the condominium or the common elements of the condominium project to support their assertions in their respective motions for summary judgment that there are no genuine issues of material fact.  The Court is left to wonder when did the Debtor leave the condominium?  Who has occupancy of the condominium today?  Did the Debtor have an obligation to winterize the property?  Did the Debtor fail to winterize the property?  Did the failure to winterize the property and shut off the power result in pipes bursting or other problems to the property?  If so, when did that occur?  If there was any destruction to the property, was it to the common elements of the condominium project, or just to

the Debtor's individual condominium unit?  What is the extent of any damage to the common elements?  Is any of the damage covered by insurance?  Who provided the invoices attached to the Maple Forest supplement to the motion for summary judgment?  Has any of this work been performed or are these statements not invoices at all, but just estimates?  In sum, there are numerous, obvious genuine issues of material fact regarding whether the Debtor's conduct somehow resulted in destruction or loss to the condominium or to the common elements; whether and how such conduct breached the master deed or bylaws; whether Maple Forest has the right to recover damages from the Debtor on account of that conduct; and whether any such right to recover is a pre-petition or post-petition claim in the Debtor's Chapter 13 case.

But there is one final argument in the cross-motions for summary judgment for the Court to consider.  The Debtor argues that it does not matter how any of these issues of fact are resolved because the Debtor's plan "surrendered" the condominium to Maple Forest.  "Surrender" is one of three options that Chapter 13 debtors have to address secured claims under § 1325(a)(5) of the Bankruptcy Code.  According to the Debtor, if a debt for damages to Maple Forest exists at all, it was already provided for by the Debtor's surrender of the condominium under § 1325(a)(5)(C) of the Bankruptcy Code.  In response, Maple Forest argues that a mere declaration of surrender in a Chapter 13 plan is insufficient to accomplish surrender and, in any event, does not warrant a determination that Maple Forest may not assert a claim for damages against the Debtor.

The Court agrees with Maple Forest.  First, it is not entirely clear to the Court exactly *how* the Debtor surrendered the condominium to Maple Forest.  The Debtor's plan is silent on the details of the surrender and Maple Forest, which initially objected to the surrender, withdrew that objection and any other objections it had to confirmation of the Debtor's plan, leaving the Court to wonder

whether Maple Forest assented to the surrender. Those cases that have examined the requirements for a surrender under § 1325(a)(5)(C) have ordinarily required some affirmative act, and not just a declaration of surrender, in order to accomplish and effectuate the surrender. The word "surrender" is not defined in the Bankruptcy Code. But, "[t]he operative phrase in § 1325(a)(5)(C), 'surrenders the property securing such claim to such holder,' makes it clear enough that the 'surrender' spoken of entails the secured creditor ultimately holding all rights, including the right of possession, in the property securing the claim." <u>I.R.S. v. White</u> (<u>In re White</u>), 487 F.3d 199, 205 (4th Cir. 2007) (internal quotation marks and citations omitted). "[T]he term 'surrender' differs from 'abandonment' . . . . '[S]urrender' is a contractual act and occurs as a result of the consent of both parties. It appears that an abandonment may include a surrender, although a surrender may not necessarily constitute a total abandonment." <u>In re Zak</u>, 361 B.R. 481, 486 (Bankr. N.D. Ohio 2007) (internal quotation marks and citations omitted). <u>But see</u> <u>In re Mattera</u>, 203 B.R. 565, 572 (Bankr. D. N.J. 1997) (finding that an obligation for time-share condominium fees was provided for under the plan because the plan reflected an intention to surrender the property, specifically listed the association creditor as a secured creditor, was confirmed and successfully completed, even though the debtor took no formal action to accomplish the surrender). The Debtor's motion for summary judgment just does not explain how the surrender was accomplished in this case, nor why the purported surrender in this case entitles the Debtor to summary judgment on Maple Forest's damage claim.

Second, even though § 1325(a)(5)(C) of the Bankruptcy Code permits surrender to the holder of an allowed secured claim, there was apparently no equity in the condominium to secure Maple Forest's claim. CitiMortgage filed a proof of claim in the amount of $182,273.57, secured by a first

mortgage on the condominium.  Guaranty Bank filed a proof of claim in the amount of $35,001.46 secured by a second mortgage on the condominium.  Those figures are not materially different than what is shown on the Debtor's schedule D - Creditors Holding Secured Claims.  There is no dispute between the Debtor and Maple Forest regarding the value of the condominium.  The Debtor scheduled the condominium as having a value of $176,718.00.  Therefore, there was no equity in the condominium to secure either the second mortgage held by Guaranty Bank or the condominium dues owed to Maple Forest.  Because there was no equity in the condominium beyond the first mortgage of CitiMortgage, the claims of Guaranty Bank and Maple Forest were not secured claims pursuant to § 506(a)(1) of the Bankruptcy Code.  They were unsecured claims.

Third, it is not clear to the Court, and the Debtor has not explained, how a debtor can ever accomplish a surrender of a single piece of property to three different secured creditors at the same time where the three creditors have separate liens purporting to secure their respective claims and the liens have different priorities in such property under applicable non-bankruptcy law.

The Debtor's purported surrender of the condominium raises more questions than it answers.  But one thing is clear: just because the Debtor's plan stated that the Debtor would "surrender" the condominium does not somehow extinguish all claims against the Debtor relating to the condominium.  The Court rejects the Debtor's contention that the stated surrender of the condominium in the Debtor's plan entitles the Debtor to summary judgment with respect to Maple Forest's claim for damages.  For the reasons explained earlier, the Court also rejects Maple Forest's claim that it is entitled to summary judgment.  There are many genuine issues of material fact regarding whether there is a damages claim at all; whether any such claim is a pre-petition claim or

post-petition claim; and whether or not any such claim constitutes a debt that is provided for by the Debtor's plan.

## Conclusion

The Court denies Maple Forest's motion for summary judgment, grants in part and denies in part the Debtor's motion for summary judgment, and makes the following rulings:

1.     Maple Forest's claim for condominium association dues is a pre-petition claim regardless of whether the condominium association dues were assessed prior to the Debtor's Chapter 13 petition, or became due and payable after the Debtor's Chapter 13 petition.

2.     Maple Forest is not entitled to a declaration that its claim for condominium association dues is non-dischargeable in the Debtor's Chapter 13 case under § 523(a)(16) of the Bankruptcy Code, or any other section of the Bankruptcy Code.

3.     Just because the Debtor's plan provides for a surrender of the condominium unit does not mean that the Debtor is absolved from liability for any claims relating to the condominium that Maple Forest may have against the Debtor.

4.     To the extent that Maple Forest's complaint seeks a declaration that Maple Forest is entitled to recover damages for destruction of the condominium under § 521 of the Bankruptcy Code, the Debtor is entitled to summary judgment dismissing the complaint.  Section 521(a)(2) and (6) of the Bankruptcy Code only apply to individuals in Chapter 7.

5.     Both the Debtor's motion for summary judgment and Maple Forest's motion for summary judgment are denied with respect to Maple Forest's damages claim because there are genuine issues of material fact.

This adversary proceeding will proceed to trial on the issues of (i) whether there is a damages claim in favor of Maple Forest and against the Debtor by reason of some action or inaction by the Debtor with respect to condominium unit 63; (ii) the amount of such claim; (iii) whether or not such claim is a pre-petition or post-petition claim; and (iv) whether or not such claim is a debt that is provided for by the Debtor's Chapter 13 plan. The Court will enter a separate order consistent with this opinion.

For publication.

Signed on October 06, 2010

                                   /s/ Phillip J. Shefferly
                                  Phillip J. Shefferly
                                  United States Bankruptcy Judge

-24-